IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MELISSA D. BUMPUS,                    :
                                      :
        Plaintiff,                    :
                                      :
v.                                    :        CIVIL ACTION 06-O778-M
                                      :
MICHAEL J. ASTRUE,                    :
Commissioner of                       :
Social Security,                      :
                                      :
        Defendant.                    :

<u>MEMORANDUM OPINION AND ORDER</u>

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3),
Plaintiff seeks judicial review of an adverse social security
ruling which denied claims for disability insurance benefits and
Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13).
The parties filed written consent and this action has been
referred to the undersigned Magistrate Judge to conduct all
proceedings and order the entry of judgment in accordance with 28
U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18).  Oral argument
was heard on June 18, 2007.  Upon consideration of the
administrative record, the memoranda of the parties, and oral
argument, it is **ORDERED** that the decision of the Commissioner be
**REVERSED** and that this action be **REMANDED** for further actions not
inconsistent with the Orders of this Court.

This Court is not free to reweigh the evidence or substitute
its judgment for that of the Secretary of Health and Human Ser-
vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983), which must be supported by substantial evidence. *Richard-son v. Perales*, 402 U.S. 389, 401 (1971).   The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born May 29, 1978.  At the time of the administrative hearing, Bumpus was twenty-six years old, had completed some college education (Tr. 857), and had previous work experience as a cook, pizza delivery driver, and a security guard (Tr. 857-58).  In claiming benefits, Plaintiff alleges disability due to major depression, panic disorder, and diabetes mellitus (Doc. 13 Fact Sheet).

The Plaintiff filed applications for disability insurance benefits and SSI on May 12, 2003 (Tr. 57-59, 830-32).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that she is capable of returning to her past relevant work as a security guard and a pizza delivery driver (Tr. 17-34).  Plaintiff requested review of the hearing decision (Tr. 15-16) by the Appeals Council, but it was denied (Tr. 9-11).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Bumpus alleges that:  (1) The ALJ did not properly consider the opinions and

diagnoses of one of the examining physicians with regard to her residual functional capacity; and (2) the ALJ improperly determined that she had failed to follow treatment that would restore her ability to work (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 15).

Plaintiff first claims[1] that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of one of Plaintiff's physicians.  Bumpus specifically asserts that although the ALJ assigned determinative weight to the opinions of an examining psychiatrist, Dr. Wilkerson, the ALJ's ultimate residual functional capacity finding is inconsistent with that opinion (Doc. 13, pp. 20-31). It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[2] *see also* 20 C.F.R. § 404.1527 (2006).  The Court further notes , however, that the opinion of a nonexamining physician "is entitled to little weight and taken alone does not constitute substantial evidence to

---

[1]Because of the Court's ruling on this claim, it will be unnecessary to address Plaintiff's other claim.

[2]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

3

support an administrative decision." *Swindle v. Sullivan*, 914
F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*,
776 F.2d 960, 962 (11th Cir. 1985).

Dr. William C. Wilkerson examined Plaintiff on May 8, 2003;
his opinions were formed from his own examination results as well
as his review of medical records, spanning a three-year period,
that had been provided from the Mobile Mental Health Center and
Franklin Primary Health Center (Tr. 428-38).  The doctor noted
that Bumpus was appropriately dressed and displayed a "mildly
depressed mood with a slightly labile affect" (Tr. 431); "speech
and thoughts [were] essentially coherent" (Tr. 432).  Plaintiff
was "oriented to self, place, time and situation" while her
attention, concentration, retention, and recall were "generally
intact;" she had "adequate insight into her mental problems" and
her judgment was generally intact (*id.*).  Wilkerson's diagnosis
was:  1) Major depression, recurrent, severe without psychotic
features; (2) Post-traumatic stress disorder; (3) Panic disorder;
(4) Diabetes mellitus, Insulin dependent; (5) Hypertension; and
(6) Obesity (Tr. 432-33).  His discussion of his conclusions,
though lengthy, is set out herein in full:

> Ms. Bumpus is a young woman who has
> suffered from the effects of depression for
> much of her life.  She has received
> intermittent treatment particularly over the
> last three years.  She appears to have had an
> incomplete resolution of her symptoms.
> Complicating factors are symptoms of post-

traumatic stress disorder resulting from childhood abuse and symptoms of panic disorder.  She has made a number of attempts at employment but does not appear to have made any lasting adjustment to the occupational world.

She does not complain of any side effects of her medication.  Her mental status is consistent with a person who has a partially treated depression.  She does not show any signs of psychosis.

Ms. Bumpus' daily activities revolve around caring for her ailments by taking her medication, checking her blood sugar and giving herself her Insulin.  She also is apparently able to manage a schedule of classes and work obligations as well as tending to her bills, although her depressive symptoms sometimes interfere with her function on this.  It appears that much of the time she is able to fulfill her obligations in these varying spheres.

The patient does appear able to manage financial benefits.  She does not have a life-long history of mental retardation or mental slowness.  She does have a mental impairment.  She has a recurrent depression. She also has a post-traumatic stress disorder and panic disorder.  At the present time in her partially treated condition the severity of her depression is moderate, however, [sic] on a fairly frequent basis her symptoms are preventing her from going to school and work.

The patient was well groomed and cooperative with the examination.  She gave a good effort on whatever tests were required of her.  She was able to establish good rapport with the examiner.  Her activities are restricted primarily in the sense that when her depression worsens that she basically is not able to get up and do much of anything.  This is at present an intermittent difficulty because she is partially treated.  Her interests are constricted in the sense that she has to be [sic] spend a great deal of time tending to her physical and mental ailments.  She appears to have a decreased ability to relate

> to other people.  She does appear to be able
> to function independently and her history
> reflects this.
>     Ms. Bumpus' ability to understand, to
> carry out and to remember instructions
> appears to be impaired by her illness
> primarily in the ability to carry out
> instructions due to the intermittent waxing
> and waning of her depressive symptoms.  Her
> ability to respond appropriately to
> supervision, to coworkers and to work
> pressures in a work setting all appear to be
> impaired by her chronic depressive disorder
> and also by her panic disorder and post-
> traumatic stress disorder.

Tr. 433-34.  Dr. Wilkerson also completed a Mental Residual Functional Capacity Questionnaire which stated that Plaintiff suffered from an Affective Disorder as demonstrated by a Depressive Syndrome which was characterized by the following: "Anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; and thoughts of suicide" (Tr. 435).  The Psychiatrist also indicated that she had an Anxiety-Related Disorder which was characterized by the following:  "Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week;" "[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;" and nightmares of abuse (Tr. 436).

Dr. Wilkerson indicated that Plaintiff's prognosis was "guarded" and that she was only in partial remission (Tr. 435).  The doctor indicated that Bumpus was moderately restricted in her activities of daily living, social functioning, and in her concentration, persistence, and pace; he indicated that she had suffered four or more "[e]pisodes of decompensation in work or work-like settings which cause[d her] to withdraw from that situation or to experience exacerbation of signs and symptoms" (Tr. 437). Wilkerson further indicated that Plaintiff would be moderately limited in her ability to do the following:  Understand, carry out, and remember instructions; respond appropriately to supervision, co-workers, and customary work pressures; and perform repetitive tasks (Tr. 437-38).  The doctor stated that Bumpus would be unable to attend work or school three-to-four times a months because of depressive symptoms; he indicated that she had suffered form this condition since she was thirteen (Tr. 438).

The ALJ summarized this evidence (Tr. 27), though not as thoroughly as set out herein, along with the other evidence.  He ultimately concluded that Bumpus could perform her past relevant work as a security guard and a pizza delivery driver.  In reaching this decision, the ALJ "assigned determinative evidentiary weight . . . to the credible findings and conclusions of the claimant's treating and examining physicians at the

Franklin Primary Health Center, the Mobile County Health
Department, and the Mobile Health Center, as well as those of the
examining psychiatrist, Dr. Wilkerson" (Tr. 30).  The ALJ further
stated that his opinions were "further supported by the opinions
of the State Agency medical and psychological consultants" (Tr.
3).

     Plaintiff has correctly noted that the only examining
physician of record to complete a mental residual functional
capacity (hereinafter *MRFC*) evaluation was done so by Dr.
Wilkerson (Doc. 13, pp. 24-25).  A second MRFC was completed by
Psychologist Donald Hinton on September 9, 2003 (Tr. 509-22)
which differed from Wilkerson's MRFC, primarily, in two aspects.
First, Hinton found Bumpus to have only mild restrictions of
activities of daily living (as opposed to moderate by the
Psychiatrist) and only one or two (as opposed to four or more)
episodes of decompensation, each of extended duration (Tr. 519;
*cf*. Tr. 437).

     The ALJ found the opinions of Hinton and Wilkerson to be
consistent with one another (Tr. 27).  The ALJ, nevertheless,
made Hinton's conclusions his own without discussing—much less
explaining—the discrepancies in these two opinions (Tr. 29).  The
ALJ is required to "state specifically the weight accorded to
each item of evidence and why he reached that decision." *Cowart
v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The difference in the conclusions between Wilkerson and Hinton could mean the difference between whether Bumpus is capable of performing her past relevant work or not.  Though the Court is specifically not finding that the ALJ's conclusions are in error, it is finding that they are not supported by substantial evidence under *Swindle*.[3]  Without a better explanation of why the ALJ chose the opinion of this non-examining Psychologist over that of the examining Psychiatrist, though stating that the opinions are consistent, the Court cannot find substantial support for that conclusion.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of evidence regarding Plaintiff's mental residual functional capacity.  Judgment will be entered by separate Order.

DONE this 19th day of June, 2007.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]The Court is well aware that the ALJ is responsible for determining a claimant's residual functional capacity under 20 C.F.R. § 404.1546 (2006).  However, the Court is responsible for making sure that the ALJ's opinion is supported by substantial evidence.